# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

DESMOND L. WEBSTER,

                    Petitioner,          :     Case No. 2:22-cv-4343

    - vs -                          Chief Judge Algenon L. Marbley
                                         Magistrate Judge Michael R. Merz

WARDEN, Lebanon Correctional
  Institution,

                                   :
                  Respondent.

## REPORT AND RECOMMENDATIONS

This is a habeas corpus action brought *pro se* by Petitioner Desmond Webster pursuant to 28 U.S.C. § 2254.  Petitioner seeks relief from his conviction in the Franklin County Court of Common Pleas and consequent sentence to life without parole (Petition, ECF No. 1).  The case is ripe for decision on the Petition, the State Court Record (ECF No. 8), and the Return of Writ (ECF No. 10).  The Court set a deadline of twenty-one days after the Return was filed for Petitioner to file a reply (Order, ECF No. 3, PageID 38), but that deadline has expired and no reply has been filed.

**Litigation History**

On September 1, 2017, Webster with three co-defendants was indicted on one count of aggravated burglary in violation of Ohio Revised Code § 2911.1, four counts of kidnapping in

1

violation of Ohio Revised Code § 2905.01, four counts of aggravated murder in violation of Ohio Revised Code § 2903.01, four counts of murder in violation of Ohio Revised Code § 2903.02, two counts of attempted murder in violation of Ohio Revised Code § 2923.02 and 2903.02, three counts of felonious assault in violation of Ohio Revised Code § 2903.11, and one count of having weapons while under disability in violation of Ohio Revised Code § 2923.13.  All counts except having weapons while under disability had accompanying three-year firearm specifications pursuant to Ohio Revised Code § 2941.145(A). The charges related to the deaths of Mohamed A. Mohamed and Abdul Cadir A. Yussuf on or about July 18-19, 2017 (Indictment, State Court Record, ECF No. 8, Ex. 1).

A jury convicted Petitioner of one count of aggravated burglary, four counts of kidnapping, four counts of aggravated murder, four counts of murder, and three counts of felonious assault, along with accompanying firearm specifications for each of these counts. (Verdict Forms- Guilty, State Court Record, ECF No. 8, Ex. 3). He was found not guilty of four counts of aggravated robbery. *Id.*, Ex. 4 The State nolled the two attempted murder charges and all the repeat violent offender specifications in the indictment. *Id.*. Ex. 5. On February 20, 2020, Webster was ordered to serve an aggregate sentence of life without parole. *Id.* In addition, the court notified Webster of the imposition of five years of post-release control upon his release from prison. *Id.*, Ex. 6.

Webster appealed raising three assignments of error, but the Ohio Tenth District Court of Appeals affirmed. *State v. Webster*, 2021-Ohio-3218 (Ohio App. 10th Dist. Sept. 16, 2021).  The Ohio Supreme Court declined to exercise jurisdiction over a further appeal.  *State v. Webster,* 165 Ohio St.3d 1495 (2021).

Webster subsequently filed his Petition in this Court raising the following grounds for relief:

> **Ground One**: The trial court improperly instructed the jury on aiding and abetting in violation of appellant's due process rights guaranteed by the United States and Ohio Constitutions.

**Supporting Facts:** ln his first assignment of error, Webster argues the trial court erred in instructing the jury on aiding and abetting. More specifically, Webster asserts the trial court erred in providing an incomplete instruction as the instruction omitted the requisite intent that the trial court erred in omitting the *mens rea* element from its complicity instruction.   As spelled out in the discussion of aggravated burglary and then applied by generic reference to all other counts, the charge apprised the jury that Webster could be convicted on a complicity theory if he aided, assisted, or encouraged another in the crime and "participate[d] in the commission of the offense by some act, word, or gesture" (beyond mere presence at the scene). Tr. at 1212. That instruction on its own and in a vacuum did permit conviction without regard to a defendant's state of mind, and does not require reference to the "purpose" element of the underlying charges. Here, Webster was not present at the shooting incident for which he was charged with aggravated murder and murder to say the least. In this case, the trial court's deviation from instructing the jury on the *mens rea*; identifies plain error being a meaningful defect in the trial; which have affected the "substantial rights" of Mr. Webster and the outcome of the trial. Had there been a correct jury instruction given concerning the *mens rea* the jury would not have convicted Mr. Webster on the alleged offenses. The State did not dispute that the complicity instruction here failed to comply with the Ohio Jury Instructions, and thus the instruction failed to instruct the jury on the required *mens rea* for complicity. With the State not disputing how the jury instruction failed to accurately state the law, this matter must be reversed. Giving [sic] that complicity was perhaps the most important instruction in this case due to the evidence presented at trial, the court's failure to instruct the jury on the *mens rea* of complicity has a substantial influence in determining the jury's verdict.


**Ground Two**: Appellant was deprived of the effective assistance of trial counsel in violation of appellant's rights under the Sixth and Fourteenth Amendments to the United States Constitution, and Section 10 and 16, Article of the Ohio Constitution.

**Supporting Facts:**  In his second assignment of error, Webster argues he received the ineffective assistance of counsel. More specifically, Webster asserts his trial counsel was ineffective in: (1) failing to object to the complicity instruction; (2) failing to move to sever his trial from Moore's trial; (3) failing to object to the prosecutor's opening statement; (4) failing to request a continuance or move for a mistrial after the state located a witness in the middle of trial; (5) failing to object to leading questions; (6) failing to object

3

to other-acts evidence; (7) failing to object to the Howard charge to the jury; and (8) failing to object to the bailiffs communications with the jury. Additionally, Webster asserts the cumulative effect of counsel's alleged errors rendered his trial counsel ineffective. Counsel conduct fell below a standard of objective reasonableness which did cause prejudice to Webster.

Webster's first allegation of ineffective assistance of counsel is his trial counsel's failure to object to the complicity instruction.

Webster's second allegation of ineffective assistance of counsel is his trial counsel's failure to move to sever his trial from his codefendant's trial. Webster's trial counsel had no strategy when he failed to move to sever Webster trial from Moore's trial.  There was no strategic benefit to Webster by having the two individuals' trials joined. The State of Ohio was the only benefiting party from such a stand point. There was no tactical decision to have the two cases remaining joined. Additionally, Webster argues he was prejudiced by the joint trial when the state introduced statements Moore made during the incident, asserting the introduction of Moore's statements violated Webster's Sixth Amendment right of confrontation. Specifically, Webster points to Anderson's testimony that Moore told Dodda he would have to shoot one of the men and Radabaugh's testimony that Moore told him after the shooting that the job was done.

Webster's third allegation of ineffective assistance of counsel is his trial counsel's failure to object to the prosecutor's improper remarks during opening statement. Here, the prosecutor stated: ["]You guys drew a pretty rough case to sit on. You're going to have to hear a lot of things that are hard to hear, disturbing things. You're going to have to see some photographs that are going to be hard to look at of the scene, what happened to these men. It's a disturbing case. It's a scary case. It's a senseless case. More than anything, it's a sad case, and it's a tragic case.["] Webster contends the prosecutor's statement improperly inflamed the passion and prejudice of the jury by appealing to its desire to address a community problem ... And all of this damage that occurred isn't limited to those five people. There's a ripple effect that happens. The families of these victims, the loved ones of these victims, the neighbors of these victims, and our community as a whole are all affected when actions like this take place. Prosecutors should not appeal to public sentiment * * * by urging the jurors to protect society, protect community values, preserve civil order, or deter future lawbreaking. Here, there is no tactical advantage to be gained by counsel's failure to object the prosecutor's improper statements.

4

Webster's fourth allegation of ineffective assistance of counsel is his trial counsel's failure to request a continuance or move for a mistrial when, after trial had already commenced, the state announced it had located Omar in Immigration Customs Enforcement ("ICE") custody and planned to call him to testify. There was no strategic benefit to accrue counsel's failure to request a continuance or to move for a mistrial.

Webster's fifth allegation of ineffective assistance of counsel is his trial counsel's failure to object to leading questions during Radabaugh's testimony on direct examination.

Webster's sixth allegation of ineffective assistance of counsel is his trial counsel's eliciting testimony from Anderson regarding other-acts evidence. Specifically, Anderson testified on cross-examination that he changed his story to police after receiving information that made him believe Webster had threatened his family.

Webster's seventh allegation of ineffective assistance of counsel is his counsel's failure to object to the *Howard* charge given to the jury. After the first full day of deliberations, the jury wrote to the trial court that it was unable to reach a unanimous decision on several counts. The trial court responded in writing to the jury to "please keep deliberating in an effort to reach a unanimous decision on the counts that are not yet decided." (Tr. Vo I. 7 at 1260.) The next day, the jury again wrote to the trial court to "inform the court that the jury is hung on a number of counts. The jury is of the opinion that it will not reach a unanimous vote as to the same." (Tr. Vol. 8 at 1265.) With the agreement of counsel for both parties, the trial court then provided the *Howard* charge to the jury. Subsequently, after further deliberations, the jury indicated it had reached a verdict on all counts. Webster argues his counsel should have objected to the *Howard* charge in the hopes that the jury could not reach a unanimous decision.

Webster's eighth allegation of ineffective assistance of counsel is his trial counsel's failure to object to the bailiff[']s communications with the jury. When a case is finally submitted the jurors must be kept together in a convenient place under the charge of an officer until they agree upon a verdict, or are discharged by the court. The court, except in cases where the offense charged may be punishable by death, may permit the jurors to separate during the adjournment of court overnight, under proper cautions, or under supervision of an officer. Such an officer shall not permit a communication to be made to them, nor make any himself, except to ask if they have agreed

5

upon a verdict, unless he does not by order of the court. Such officer shall not communicate to any person, before the verdict is delivered, any matter in relation to their deliberation. The first communication occurred when, during deliberations, the jury asked the bailiff "what happens if we have charges that we can't reach an agreement on." (Tr. Vol. 7 at 1256.) The bailiff responded that she could not answer the question, and at the trial court's instructions, the bailiff then told the jury to reduce the question to writing for submission to the court. The second communication related to whether the jury should return to court to announce its verdict that day or adjourn for the evening and announce its verdict the next morning. Specifically, the trial court received a note from the jury stating "[t]he jury has reached a verdict on all counts, but we would like to finish for the day because one juror has an important medical appointment this evening. Return tomorrow at 11 a.m. and begin court at 11:30." (Tr. Vol. 8 at 1272.) As Webster notes, the court did not authorize the bailiff[']s discussion with the jurors about scheduling. "Misconduct of a court officer, including a bailiff, in communicating to the jury during its deliberations 'will be presumed to be prejudicial to a defendant against whom, after such communication, a verdict is returned by such jury.'"

**Ground Three:** The trial court violated appellant's right to due process and a fair trial when it entered a judgment of conviction based on insufficient evidence and against the manifest weight of the evidence in violation of appellant's rights under the United States and Ohio Constitutions.

**Supporting Facts:** In his third and final assignment of error, Webster argues there was insufficient evidence to support his convictions and that his convictions are against the manifest weight of the evidence. Whether there is legally sufficient evidence to sustain a verdict is a question of law. Sufficiency is a test of adequacy. The relevant inquiry for an appellate court is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime proven beyond a reasonable doubt.

(Petition, ECF No. 2, PageID 28, 30-31, 32).

# Analysis

**Ground One:  Improper Jury Instruction**

In his first Ground for Relief, Webster contends the instructions given to the jury deprived him of due process of law in violation of both the United States and Ohio Constitutions by omitting the *mens rea* element from the complicity instruction on aiding and abetting.

Federal habeas corpus is available only to correct federal constitutional violations.  28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983).   "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); see also *Elmendorf v. Taylor*, 23 U.S. (10 Wheat.) 152, 160 (1825)(Marshall C. J.); *Bickham v. Winn*, 888 F.3d 248 (6th Cir. Apr. 23, 2018)(Thapar, J. concurring).   This Report therefore will not analyze Petitioner's claim under the Ohio Constitution.

The jury instruction claim was the first assignment of error on direct appeal.  The Tenth District found Webster had made no objection to the omission of the *mens rea* element at trial and had thereby waived all but plain error review.  *State v. Webster,* 2021-Ohio-3218, ¶ 27 (Ohio App. 10th Dist. Sept. 16, 2021).

Respondent argues Ground One is procedurally defaulted because of the absence of a contemporaneous objection (Return, ECF No. 10, PageID 1794, *et seq*.)  The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by

procedural default. *Barton v. Warden, S. Ohio Corr. Facility,* 786 F.3d 450, 464 (6th Cir. 2015),

*Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965

(6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*,

785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001);

*Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord, Hartman v. Bagley,* 492 F.3d 347, 357

(6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002). A habeas petitioner

can overcome a procedural default by showing cause for the default and prejudice from the asserted

error. *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015).

Ohio has a relevant procedural rule — the contemporaneous objection rule -- that parties

must preserve errors for appeal by calling them to the attention of the trial court at a time when the

error could have been avoided or corrected, set forth in *State v. Glaros*, 170 Ohio St. 471 (1960),

paragraph one of the syllabus; *see also State v. Mason*, 82 Ohio St. 3d 144, 162 (1998).

The Tenth District enforced that rule by engaging only in plain error review. An Ohio state appellate court's review for plain error is enforcement, not waiver, of a procedural default. *Wogenstahl v. Mitchell,* 668 F.3d 307, 337 (6th Cir. 2012); *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle,* 271 F.3d 239 (6th Cir. 2001).

The Sixth Circuit has repeatedly held the contemporaneous objection rule is an adequate and independent state ground of decision. *Wogenstahl v. Mitchell*, 668 F.3d 307, 334 (6th Cir. 2012), *citing Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir. 2010); *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005); *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), *citing Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S. 107, 124-29 (1982). *See also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir.), *cert. denied*, 562 U.S. 876 (2010).

A habeas petitioner can avoid a procedural default by showing excusing cause and prejudice for the default. *Maupin, supra*. A candidate here would be that the failure to make a contemporaneous objection constituted ineffective assistance of trial counsel. However, before a habeas petitioner can rely on a claim of ineffective assistance of trial counsel, he must have submitted that claim to the state courts and been successful. *Edwards v. Carpenter,* 529 U.S. 446 (2000). Webster submitted this ineffective assistance of trial counsel claim to the Tenth District on direct appeal, but, applying the correct federal standard from *Strickland v. Washington,* 466

U.S. 668 (1984), the court found the claim was without merit. As reviewed below under the Second Ground for Relief, that ruling is entitled to deference by this Court under 28 U.S.C. § 2254(d)(1). Therefore Webster has procedurally defaulted his First Ground for Relief without excusing cause and the claim should be dismissed with prejudice on that basis.

**Ground Two: Ineffective Assistance of Trial Counsel**

In his Second Ground for Relief, Webster raises eight sub-claims of ineffective assistance of trial counsel. They will be analyzed here seriatim.

**Sub-claim One: Failure to Object to the Complicity Instruction**

In his First Sub-claim, Webster asserts his trial attorney provided ineffective assistance when he failed to make a contemporaneous objection to the complicity instruction. This sub-claim was part of Webster's Second Assignment of Error on direct appeal. Applying the correct federal standard from *Strickland v. Washington,* 466 U.S. 668 (1984), the Tenth District decided this sub-claim as follows:

> A. Failing to Object to Complicity Instruction
>
> {¶ 39} Webster's first allegation of ineffective assistance of counsel is his trial counsel's failure to object to the complicity instruction. To succeed on a claim of ineffective assistance of counsel based on counsel's failure to file an objection, an appellant must demonstrate that the objection had a reasonable probability of success. *State v. Jones*, 10th Dist. No. 18AP-33, 137 N.E.3d 661, 2019-Ohio-2134, ¶ 52, citing *State v. Johns*, 10th Dist. No. 11AP-203, 2011-Ohio-6823, ¶ 25. Additionally, to show prejudice under the second prong of the *Strickland* test based on counsel's lack of objection, an appellant must establish a reasonable probability that the result of

10

the trial would have been different had counsel made the objection. *State v. Messenger*, 10th Dist. No. 19AP-879, 2021-Ohio-2044, ¶ 72.

{¶ 40} Webster's argument reflects the argument he made under his first assignment of error on appeal. Because trial counsel failed to object to the trial court's jury instructions, we reviewed Webster's first assignment of error under a plain error standard, and, in disposing of that argument, we concluded Webster was unable to demonstrate plain error. " '[W]here the failure to object does not constitute plain error, the issue cannot be reversed by claiming ineffective assistance of counsel.' " *State v. Roy*, 10th Dist. No. 14AP-223, 2014-Ohio-4587, ¶ 20, quoting *State v. Carson*, 10th Dist. No. 05AP-13, 2006-Ohio-2440, ¶ 51. In addressing Webster's first assignment of error, we held that the trial court did not plainly err when it instructed the jury on complicity because Webster could not conclude the outcome of the trial clearly would have been different had the trial court provided a different instruction on complicity. Similarly, we conclude Webster's argument regarding the complicity instruction as it relates to a claim of ineffective assistance of counsel fails to satisfy the second prong of the *Strickland* test as Webster does not establish a reasonable probability that the result of the trial would have been different had his counsel objected to the instruction. *See State v. Mankin*, 10th Dist. No. 19AP-650, 2020-Ohio-5317, ¶ 30. As Webster cannot show the required prejudice under the second prong of the *Strickland* test, his trial counsel's failure to object to the complicity instruction does not amount to ineffective assistance of counsel.

*Webster, supra.* Thus the Tenth District decided this sub-claim on the merits.

When a state court has decided on the merits a claim later presented in habeas corpus, the federal court must defer to the state court's decision unless it is contrary to or an objectively unreasonable application of clearly established United States Supreme Court precedent. 28 U.S.C. § 2254(d)(1). Webster has made no such showing.

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's

11

> performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.  In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice.  *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . .  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance;  that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694.  *See also Darden v. Wainwright*, 477 U.S. 168, 184 (1986), *citing Strickland, supra.*; *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), *citing Strickland, supra*; *Blackburn v. Foltz*, 828 F.2d 1177, 1180 (6th Cir. 1987), *quoting Strickland,* 466 U.S. at 687. "The likelihood of

a different result must be substantial, not just conceivable."  *Storey v. Vasbinder*, 657 F.3d 372,

379 (6th Cir. 2011), *quoting Harrington v. Richter*, 562 U.S. 86, 111-12 (2011).

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes*, 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328 (2009) (per curiam); *Strickland*, 466 U.S., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. Id., at 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." *Id*., at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The likelihood of a different result must be substantial, not just conceivable. *Id*., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

*Harrington v. Richter*, 562 U.S. 86, 111-112 (2011).

Although there are two prongs to the *Strickland* test, courts may address only one prong if

it is dispositive:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Strickland*, 466 U.S. at 697.  The Tenth District held that Webster had failed to prove prejudice

because he had failed to show the outcome of the trial would probably have been different if counsel had objected. *Webster, supra,* at ¶ 40. That is not an unreasonable application of *Strickland* and it is thus entitled to deference. Petitioner's first ineffective assistance of trial counsel sub-claim should therefore be denied on the merits.

**Sub-claim Two:  Failure to Move to Sever from Co-Defendant**

In his Second Sub-claim., Webster asserts his trial attorney provided ineffective assistance when he failed to move to sever his trial from that of co-defendant Moore. The Tenth District decided this claim as follows:

> {¶ 41} Webster's second allegation of ineffective assistance of counsel is his trial counsel's failure to move to sever his trial from his codefendant's trial. To succeed on a claim of ineffective assistance of counsel based on trial counsel's failure to file a motion, an appellant must show (1) the motion was meritorious or likely to be granted, and (2) a reasonable probability that the verdict would have been different had counsel made the motion. *State v. Massey*, 10th Dist. No. 12AP-649, 2013-Ohio-1521, ¶ 14, citing *State v. Simms*, 10th Dist. No. 10AP-1063, 2012-Ohio-2321, ¶ 50, citing *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 63. " 'Counsel is not deficient for failing to raise a meritless issue.' " *State v. Neil*, 10th Dist. No. 14AP-981, 2016-Ohio-4762, ¶ 53, quoting *Massey* at ¶ 13.

> {¶ 42} Pursuant to Crim.R. 8(B), two or more codefendants may be charged in the same indictment "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses, or in the same course of criminal conduct." *See also State v. Klinkner*, 10th Dist. No. 13AP-469, 2014-Ohio-2022, ¶ 18. "As a general rule, the law favors joinder of trials because, among other reasons, it conserves judicial resources and reduces the possibility of incongruous results before different juries." *Id.*, citing *State v. Walters*, 10th Dist. No. 06AP-693, 2007-Ohio-5554, ¶ 21. However, under Crim.R. 14, a defendant may move for severance from a codefendant's trial upon a showing of prejudice. *Klinkner* at ¶ 18,

citing *State v. Lott*, 51 Ohio St.3d 160, 163, 555 N.E.2d 293 (1990); *State v. Pippins*, 10th Dist. No. 15AP-137, 151 N.E.3d 1150, 2020-Ohio-503, ¶ 63.

{¶ 43} Webster argues that his trial counsel was ineffective for failing to move for severance under Crim.R. 14 because Moore and Webster presented mutually antagonistic defenses. "One example of prejudice from improper joinder of defendants for trial is mutually antagonistic defenses, which are cases in which defendants seek to exculpate themselves at the cost of inculpating co-defendants." *Pippins* at ¶ 64, citing *State v. Walters*, 10th Dist. No. 06AP-693, 2007-Ohio-5554, ¶ 23-27, citing *Zafiro v. United States*, 506 U.S. 534, 538-39, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). To show prejudice under Crim.R. 14 and merit severance, the defenses "must be antagonistic to the point of being irreconcilable and mutually exclusive." *Klinkner* at ¶ 19, citing *State v. Miller*, 10th Dist. No. 11AP-899, 2013-Ohio-1242, ¶ 52, citing *Walters* at ¶ 23.

{¶ 44} Webster asserts that Moore's defense strategy was to blame Webster for the events. However, a review of the record indicates that Webster mischaracterizes the defenses the codefendants presented at trial. Both Moore and Webster denied any involvement in the offenses. Though Moore's counsel noted Moore was not in the same general group as Webster, Anderson, Radabaugh, and Hassan, Moore did not present a defense placing the blame on Webster or attempt to inculpate Webster so as to exculpate himself. Instead, both Moore and Webster denied any involvement in the offense and sought to undermine the credibility of the testifying witnesses. Thus, Webster's and Moore's defenses were not antagonistic to the point of being "irreconcilable and mutually exclusive," and Webster cannot show the kind of prejudice that Crim.R. 14 requires in order to merit severance. *Walters* at ¶ 23; *Klinkner* at ¶ 19-20.

{¶ 45} It is also conceivable that Webster's trial counsel's decision not to request a separate trial was a strategic decision. Strategic and tactical decisions of counsel, even if ultimately unsuccessful, cannot form the basis of a claim of ineffective assistance of counsel. *Columbus v. Oppong*, 10th Dist. No. 15AP-1059, 2016-Ohio-5590, ¶ 30, citing *State v. Harris*, 10th Dist. No. 15AP-683, 2016-Ohio-3424, ¶ 61. Webster's trial counsel may have had a strategic reason not to request a separate trial, including a hope that the jury may not find him guilty of all the offenses if it had the option to convict Moore instead. *State v. Jennings*, 10th Dist. No. 09AP-70, 2009-Ohio-6840, ¶ 126 ("Jennings' trial counsel may well have had a strategic reason for not seeking severance, perhaps finding some benefit in the pooled resources of a joint trial.").

15

{¶ 46} Additionally, Webster argues he was prejudiced by the joint trial when the state introduced statements Moore made during the incident, asserting the introduction of Moore's statements violated Webster's Sixth Amendment right of confrontation. Specifically, Webster points to Anderson's testimony that Moore told Dodda he would have to shoot one of the men and Radabaugh's testimony that Moore told him after the shooting that the job was done. A confrontation clause problem arises from the statement of a codefendant at a joint trial "only when the trial court admits into evidence a non-testifying defendant's statement that implicates the other defendant in criminal activity." *Walters* at ¶ 27, citing *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Here, however, the statements Webster complains of did not implicate Webster and instead related to Moore's own conduct throughout the events. Thus, the statements did not create a *Bruton* rule confrontation clause issue and did not warrant severance of the codefendants' trials. *See Jennings* at ¶ 79 (noting "[t]he *Bruton* analysis requires an appellate court to consider whether the contested out-of-court statement is incriminating to the defendant on its face").

{¶ 47} For these reasons, Webster does not demonstrate that a motion for severance under Crim.R. 14 was likely to be granted. *Massey* at ¶ 14. Accordingly, his trial counsel's failure to move for severance does not constitute ineffective assistance of counsel.

*Webster, supra.* Thus the Tenth District basically held that it was not ineffective assistance of trial counsel to fail to move to sever because any such motion would likely not have been granted. Webster has failed to demonstrate that this is an objectively unreasonable application of *Strickland* and it is thus entitled to deference. Webster's second ineffective assistance of trial counsel sub-claim should be denied.

### Sub-claim Three: Failure to Object to Prosecutor's Opening Statement

In his third sub-claim Webster asserts he received ineffective assistance of trial counsel when his trial attorney failed to object to certain comments in the prosecutor's opening statement. The Tenth District decided this claim as follows:

16

{¶ 48} Webster's third allegation of ineffective assistance of counsel is his trial counsel's failure to object to the prosecutor's improper remarks during opening statement. The test for prosecutorial misconduct based on a prosecutor's statements to the jury "is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984), citing *United States v. Dorr*, 636 F.2d 117 (5th Cir. 1981). " '[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.' " *State v. Wilkerson*, 10th Dist. No. 01AP-1127, 2002-Ohio-5416, ¶ 38, quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

{¶ 49} Here, the prosecutor stated:

> You guys drew a pretty rough case to sit on. You're going to have to hear a lot of things that are hard to hear, disturbing things. You're going to have to see some photographs that are going to be hard to look at of the scene, what happened to these men. It's a disturbing case. It's a scary case. It's a senseless case. More than anything, it's a sad case, and it's a tragic case.
> * * *
> And all of this damage that occurred isn't limited to those five people. There's a ripple effect that happens. The families of these victims, the loved ones of these victims, the neighbors of these victims, and our community as a whole are all affected when actions like this take place.

(Tr. Vol. 2 at 263-64.) Webster contends the prosecutor's statement improperly inflamed the passion and prejudice of the jury by appealing to its desire to address a community problem. *See State v. Presley*, 10th Dist. No. 02AP-1354, 2003-Ohio-6069, ¶ 90 (" '[p]rosecutors should not appeal to public sentiment * * * by urging the jurors to protect society, protect community values, preserve civil order, or deter future lawbreaking' "), quoting *State v. Loch*, 10th Dist. No. 02AP-1065, 2003-Ohio-4701, ¶ 67, citing *State v. Spirko*, 59 Ohio St.3d 1, 13, 570 N.E.2d 229 (1991). *State v. Draughn*, 76 Ohio App.3d 664, 671, 602 N.E.2d 790 (5th Dist.1992) (holding a prosecutor "may not invite the jury to judge the case upon standards or grounds other than the evidence and law of the case," and "cannot inflame the passion and prejudice of the jury by appealing to community abhorrence or expectations with respect to crime in general, or crime of the specific type involved in the case"), citing *United States v. Solivan*, 937 F.2d 1146 (6th Cir. 1991).

17

{¶ 50} Even assuming, for purposes of argument, that the prosecutor's statements were improper, it does not necessarily follow that Webster's counsel was deficient in failing to object to the prosecutor's statements. Counsel may choose, as a tactical decision, not to object to the prosecutor's opening statement even if the prosecutor has engaged in prosecutorial misconduct. *State v. Shine-Johnson*, 10th Dist. No. 17AP-194, 117 N.E.3d 986, 2018-Ohio-3347, ¶ 121, citing *State v. Gumm*, 73 Ohio St.3d 413, 428, 653 N.E.2d 253 (1995) (defense counsel's failure to object to prosecutorial misconduct "does not constitute ineffective assistance of counsel per se, as that failure may be justified as a tactical decision"). Moreover, Webster does not identify how he was prejudiced by the prosecutor's statement other than to assert generally that the statement must have affected the jury. However, the trial court instructed the jury that opening and closing statements were not evidence and further instructed the jury to make their findings "without bias, sympathy, or prejudice." (Tr. Vol. 6 at 1243.) The jury is presumed to follow these instructions. *State v. Fudge*, 10th Dist. No. 16AP-821, 105 N.E.3d 766, 2018-Ohio-601, ¶ 52 (where appellant alleges prosecutorial misconduct based on the prosecutor's statements to the jury, the appellant was not denied a fair trial as the trial court instructed the jury that opening and closing arguments are not evidence), citing *State v. Thompson*, 3d Dist. No. 7-16-10, 85 N.E.3d 1108, 2017-Ohio-792, ¶ 26, citing *Pang v. Minch*, 53 Ohio St.3d 186, 187, 559 N.E.2d 1313 (1990). Thus, the failure of Webster's trial counsel to object to the prosecutor's statements does not substantiate a claim for ineffective assistance of counsel.

*Webster, supra.* Thus the Tenth District concluded Webster failed to satisfy either the deficient performance or the prejudice prong of *Strickland* and he has failed to show how this decision is an objectively unreasonable application of *Strickland.* Petitioner's third sub-claim of ineffective assistance of trial counsel should therefore be dismissed.

**Sub-claim Four: Failure to Move for a Mistrial or Continuance after State Located a Witness**

In his Fourth Sub-claim of ineffective assistance of trial counsel, Webster asserts he received ineffective assistance of trial counsel when his attorney failed to move for a mistrial or a

continuance after the State announced it had found a witness.  The Tenth District decided this claim as follows:

> ¶ 51} Webster's fourth allegation of ineffective assistance of counsel is his trial counsel's failure to request a continuance or move for a mistrial when, after trial had already commenced, the state announced it had located Omar in Immigration Customs Enforcement ("ICE") custody and planned to call him to testify. There is no dispute that the state had included Omar on its witness list during discovery, and, upon learning the state would call Omar to testify, trial counsel took time to discuss the matter with Webster before announcing to the court that Webster "would like to just continue with his trial." (Tr. Vol. 3 at 453.) Nonetheless, Webster now categorizes Omar as a surprise witness and asserts his counsel should have moved for a continuance or declared a mistrial.
>
> {¶ 52} The decision whether to request a continuance after learning of surprise evidence or a surprise witness is a matter of trial strategy. *State v. Ali*, 10th Dist. No. 18AP-935, 2019-Ohio-3864, ¶ 44, citing *State v. Bailey*, 10th Dist. No. 04AP-553, 2005-Ohio-4068, ¶ 26 (failing to request a continuance after surprise witness testimony did not amount to ineffective assistance of counsel as it fell within the realm of a strategic and tactical decision). Similarly, "[t]he decision not to request a mistrial is one of trial strategy best left to trial counsel." *State v. Zeune*, 10th Dist. No. 10AP-1102, 2011-Ohio-5170, ¶ 37, citing *State v. Seiber*, 56 Ohio St.3d 4, 12, 564 N.E.2d 408 (1990). This court will not lightly second-guess such strategic decisions. *Id.*, citing *Seiber* at 12, 564 N.E.2d 408.
>
> {¶ 53} Webster asserts his trial counsel should have requested a continuance or mistrial in the hopes that ICE would have acted to deport Omar, thereby preventing his testimony. Other than this highly speculative suggestion, Webster does not assert that Omar's presence at trial rendered his trial unfair or demonstrate that the trial court would have granted a continuance or mistrial had his counsel so moved. *See State v. Drayer*, 159 Ohio App.3d 189, 2004-Ohio-6120, ¶ 24, 823 N.E.2d 492 (10th Dist.) ("[a] mistrial is an extreme remedy, 'declared only when the ends of justice so require and a fair trial is no longer possible' "), quoting *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991). That Omar's testimony was not favorable to Webster does not render Webster's trial unfair. Webster's defense all through trial was a denial of involvement. He does not articulate how Omar's testimony, or the lack thereof, would have changed that defense, let alone changed the outcome of trial. There is nothing in the record demonstrating that there is a

> reasonable probability that the result of the proceedings would have been different if trial counsel had requested a continuance or mistrial. *Ali* at ¶ 45, citing *Bailey* at ¶ 27. Thus, Webster's trial counsel's failure to request a continuance or move for a mistrial does not amount to ineffective assistance of counsel.

*Webster, supra.* Thus the Tenth District effectively decided this sub-claim satisfied neither the deficient performance nor the prejudice prong of *Strickland.* Petitioner has not shown how this decision is an unreasonable application of *Strickland* and it is thus entitled to deference under § 2254(d)(1). Webster's fourth sub-claim of ineffective assistance of trial counsel should be dismissed.


**Sub-claim Five: Failure to Object to Leading Questions**


In his Fifth Sub-claim, Webster asserts he received ineffective assistance of trial counsel when his defense attorney did not object to leading questions put to witness Radabaugh. The Tenth District Court of Appeals decided this claim on the deficient performance prong of *Strickland* as follows:

> {¶ 54} Webster's fifth allegation of ineffective assistance of counsel is his trial counsel's failure to object to leading questions during Radabaugh's testimony on direct examination. "Because a trial court has broad discretion in allowing leading questions, counsel's decision not to object is within the realm of trial strategy." *State v. Jones*, 10th Dist. No. 18AP-33, 137 N.E.3d 661, 2019-Ohio-2134, ¶ 59, citing *State v. Edwards*, 10th Dist. No. 10AP-681, 2011-Ohio-3157, ¶ 16. "Thus, an appellate court 'need not second-guess the decision of appellant's defense counsel to not object to leading questions.' " *Id.*, quoting *Edwards* at ¶ 16; *see also State v. Jackson*, 92 Ohio St.3d 436, 449, 751 N.E.2d 946 (2001) (declining to find ineffective assistance of counsel from trial counsel's failure to object to the state's excessive leading questioning). Further, had trial counsel objected to any of the state's leading questions, "the state could have simply rephrased" the questions following the objection. *Jones* at ¶ 60 (finding any objections to leading questioning would

20

> not have had a reasonable probability of success), citing *Edwards* at ¶ 17. Accordingly, Webster's trial counsel was not deficient in failing to object to the state's occasional leading questioning.

*Webster, supra*. Characterizing failure to object as a tactical decision is well within the ineffective assistance of trial counsel jurisprudence developed in the wake of *Strickland* and the Tenth District's interpretation and application is well-within the mainstream of that jurisprudence. Webster's Fifth Sub-claim of ineffective assistance of trial counsel should be dismissed.

**Sub-claim Six: Eliciting Damaging Other Acts Evidence**

In his Sixth Sub-claim of ineffective assistance of trial counsel, Petitioner asserts his trial attorney elicited damaging testimony from witness Anderson. The Tenth District decided this claim as follows:

> {¶ 55} Webster's sixth allegation of ineffective assistance of counsel is his trial counsel's eliciting testimony from Anderson regarding other-acts evidence. Specifically, Anderson testified on cross-examination that he changed his story to police after receiving information that made him believe Webster had threatened his family. Webster construes this testimony as impermissible other-acts evidence under Evid.R. 404(B) and argues his counsel should not have permitted the jury to hear it. *See* Evid.R. 404(B) ("[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith"). However, as the Supreme Court of Ohio recently reiterated, "while evidence showing the defendant's character or propensity to commit crimes or acts is forbidden, evidence of other acts is admissible when the evidence is probative of a separate, nonpropensity-based issue." *State v. Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, ¶ 22, 161 N.E.3d 651, citing Evid.R. 404(B). Here, we do not agree with Webster that Anderson's testimony was admitted to prove his character or propensity to commit other crimes or acts. Instead, the testimony, in context, related to why Anderson changed his story to police.

> {¶ 56} Additionally, when read in context, Webster's counsel used this line of questioning in order to undermine Anderson's credibility, ultimately getting Anderson to admit to inconsistencies in his story. Thus, even if we were to construe this testimony as impermissible propensity evidence under Evid.R. 404(B), counsel's decision to elicit this testimony was likely a strategic decision to undermine Anderson's credibility. *See Messenger* at ¶ 68 (counsel's decision not to object to the search warrant affidavit was likely a strategic decision to not call attention to the unfavorable evidence). This strategic decision will not form the basis of a claim of ineffective assistance of counsel. *Oppong* at ¶ 30.

*Webster, supra.*  Thus the Tenth District decided the other acts evidence was elicited not to prove Webster's character by showing a propensity to commit crimes, but for a valid strategic purpose. Petitioner has offered no authority showing this is an objectively unreasonable application of *Strickland*.  Therefore it is entitled to deference under AEDPA.  Petitioner's Sixth Sub-claim should therefore be dismissed with prejudice.

**Sub-claim Seven:  Failure to Object to *Howard* Charge**

In his Seventh sub-claim. Webster claims he received ineffective assistance of trial counsel when his attorney failed to object to the Court's giving a *Howard* charge.  The Tenth District decided this conduct was not deficient practice:

> {¶ 57} Webster's seventh allegation of ineffective assistance of counsel is his counsel's failure to object to the *Howard* charge given to the jury. *See State v. Howard*, 42 Ohio St.3d 18, 537 N.E.2d 188 (1989). After the first full day of deliberations, the jury wrote to the trial court that it was unable to reach a unanimous decision on several counts. The trial court responded in writing to the jury to "please keep deliberating in an effort to reach a unanimous decision on the counts that are not yet decided." (Tr. Vol. 7 at 1260.) The next day, the jury again wrote to the trial court to "inform the court that the jury is hung on a number of counts. The jury is of the opinion that it will not reach a unanimous vote as to the same." (Tr. Vol. 8 at 1265.) With the agreement of counsel for both parties, the trial

court then provided the *Howard* charge to the jury. Subsequently, after further deliberations, the jury indicated it had reached a verdict on all counts. Webster now argues his counsel should have objected to the *Howard* charge in the hopes that the jury could not reach a unanimous decision.

{¶ 58} "[T]he *Howard* charge ' "is intended for a jury that believes it is deadlocked, so as to challenge them to try one last time to reach a consensus." ' " *State v. Norman*, 10th Dist. No. 12AP-505, 992 N.E.2d 432, 2013-Ohio-1908, ¶ 42, quoting *State v. Brown*, 100 Ohio St.3d 51, 2003-Ohio-5059, ¶ 38, 796 N.E.2d 506, quoting *State v. Robb*, 88 Ohio St.3d 59, 81, 723 N.E.2d 1019 (2000). "Whether the jury is irreconcilably deadlocked is essentially ' "a necessarily discretionary determination" ' for the trial court to make." *Norman* at ¶ 41 (noting trial courts weighing the *Howard* charge must evaluate circumstances specific to each individual case), quoting *Brown* at ¶ 37, quoting *Arizona v. Washington*, 434 U.S. 497, 510, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978), fn. 28. Webster does not argue that the trial court abused its discretion in giving the *Howard* charge; instead, he merely asserts his counsel should not have agreed to the *Howard* charge because of the jury's ultimate verdict. Because the trial court acted within its discretion in giving the *Howard* charge, an objection to the *Howard* charge did not have a reasonable probability of success. Thus, Webster's counsel was not deficient in agreeing to the *Howard* charge.

*Webster, supra.*    Again, Webster offers no authority to suggest this was an objectively unreasonable application of *Strickland*.  Thus it is entitled to AEDPA deference and Webster's Seventh sub-claim should be dismissed with prejudice.


**Sub-claim Eight:    Failure to Object to the Bailiff's Communication with the Jury**


In his eighth sub-claim of ineffective assistance of trial counsel, Petitioner asserts his attorney should have objected to the bailiff's communication with the jury.  The Tenth District decided this claim as follows:

{¶ 59} Webster's eighth allegation of ineffective assistance of counsel is his trial counsel's failure to object to the bailiff's communications with the jury. Pursuant to R.C. 2945.33:

> When a case is finally submitted the jurors must be kept together in a convenient place under the charge of an officer until they agree upon a verdict, or are discharged by the court. The court, except in cases where the offense charged may be punishable by death, may permit the jurors to separate during the adjournment of court overnight, under proper cautions, or under supervision of an officer. Such an officer shall not permit a communication to be made to them, nor make any himself, except to ask if they have agreed upon a verdict, unless he does not by order of the court. Such officer shall not communicate to any person, before the verdict is delivered, any matter in relation to their deliberation.

Here, Webster argues the bailiff violated R.C. 2945.33 when she engaged in two separate communications with the jury.

{¶ 60} The first communication occurred when, during deliberations, the jury asked the bailiff "what happens if we have charges that we can't reach an agreement on." (Tr. Vol. 7 at 1256.) The bailiff responded that she could not answer the question, and at the trial court's instructions, the bailiff then told the jury to reduce the question to writing for submission to the court. R.C. 2945.33 provides that an officer of the court shall not make any communication to the jury "unless he does so by order of the court." *See also State v. Adam*s, 141 Ohio St. 423, 430-31, 48 N.E.2d 861 (1943) ("the bailiff shall not, unless by order of the court, make any communication to the jurors"). As to the first communication, the bailiff appropriately stated she could not answer the jury's questions, informed the trial court, and, upon the trial court's authorization, instructed the jury to submit a written question. Thus, the first communication did not violate R.C. 2945.33. *See State v. DiPietro*, 10th Dist. No. 09AP-202, 2009-Ohio-5854, ¶ 15 (bailiff's conduct did not violate R.C. 2945.33 where the trial court ordered the communication from the bailiff to the jury).

{¶ 61} The second communication related to whether the jury should return to court to announce its verdict that day or adjourn for the evening and announce its verdict the next morning. Specifically, the trial court received a note from the jury stating "[t]he jury has reached a verdict on all counts, but we would like to finish for the day because one juror has an important medical appointment this

evening. Return tomorrow at 11 a.m. and begin court at 11:30." (Tr. Vol. 8 at 1272.) After some discussion with counsel for both parties, the trial court decided to advise the jury it could adjourn that evening and be reminded of their admonition. However, a few minutes later, the bailiff relayed the following discussion with the jury to the court:

> One of them had something to do in the morning, and that's why they couldn't come in. So I said, well, we can do it now; everybody's here.
> And the one guy said, well, I have a doctor's appointment.
> I said, what time.
> He said 6:30.
> I said it's two and a half hours [from now].
> He goes, well, it's just blood work; I can do it in the morning; let's just do it now.

(Tr. Vol. 8 at 1276.) Thereafter, with the agreement of the parties, the trial court called the jury into the courtroom to announce its verdict. Webster asserts this communication between the bailiff and the jury violated R.C. 2945.33 and warranted an objection from his trial counsel.

{¶ 62} As Webster notes, the court did not authorize the bailiff's discussion with the jurors about scheduling. "Misconduct of a court officer, including a bailiff, in communicating to the jury during its deliberations 'will be presumed to be prejudicial to a defendant against whom, after such communication, a verdict is returned by such jury.' " *DiPietro* at ¶ 16, quoting *Adams* at paragraph three of the syllabus. As a general rule, therefore, court personnel's unauthorized communication with the jury in the defendant's absence may be grounds for a new trial. *DiPietro* at ¶ 16, citing *State v. Abrams*, 39 Ohio St.2d 53, 55-56, 313 N.E.2d 823 (1974). However, the presumption of prejudice is not conclusive. *Id.* Instead, the burden shifts and " ' "rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant." ' " (Internal quotation marks omitted.) *Id.*, quoting *State v. Murphy*, 65 Ohio St.3d 554, 575, 605 N.E.2d 884 (1992), quoting *Remmer v. United States*, 347 U.S. 227, 229, 74 S.Ct. 450, 98 L.Ed. 654 (1954).

{¶ 63} In determining whether the communication from court personnel to the deliberating jury resulted in prejudice, the court must examine both the nature and content of the communication. *DiPietro* at ¶ 17, citing *Murphy* at 575, 605 N.E.2d 884. "The presumption of prejudice from *Adams* does not arise if the court's

communication with the jury is not substantive in nature." *Id.*, citing *State v. Allen*, 73 Ohio St.3d 626, 630, 653 N.E.2d 675 (1995). "A statement of the trial court or its official is not substantive if it does not address any legal issues, any fact in controversy, any law applicable to the case, or some similar matter." *Id.*, citing *State v. Cook*, 10th Dist. No. 05AP-515, 2006-Ohio-3443, ¶ 36.

{¶ 64} Here, the second communication involved the timing of delivering the verdict that the jury had stated it had already reached; it did not involve a substantive matter. *DiPietro* at ¶ 18 ("[s]tatements concerning the status of deliberations generally are procedural rather than substantive"), citing *State v. Robinson*, 12th Dist. No. CA2005-11-029, 2007-Ohio-354, ¶ 41 (finding bailiff's question to jurors "regarding whether they intended to continue to deliberate or retire for the evening, was merely procedural and did not involve substantive issues of the case or in any way relate to appellant's guilt or innocence"). As the second communication did not involve a substantive issue, the presumption of prejudice from the communication does not arise. *Id.* Thus, given the nature of the communications between the bailiff and the jury, Webster cannot show his trial counsel was deficient in failing to object.

*Webster, supra.* Because the bailiff's communication was not substantive, the Tenth District found there was no prejudice to Webster and therefore it was not ineffective assistance of trial counsel to fail to object. Again, Webster has offered no authority to show this was an objectively unreasonable application of *Strickland* or of *Remmer*.

In sum, the Tenth District's thorough consideration of Webster's ineffective assistance of trial counsel claims resulted in a decision well within the relevant progeny of *Strickland*. Ground for Relief Two should therefore be dismissed with prejudice.

## Ground Three:  Conviction without Sufficient Evidence and Against the Manifest Weight of the Evidence

In his Third Ground for Relief, Petitioner claims his convictions are based on legally insufficient evidence and are against the manifest weight of the evidence.

The second portion of this claim is not cognizable in habeas corpus because it does not

state a claim under the United States Constitution. The Sixth Circuit has held a weight of the evidence claim is not a federal constitutional claim. *Johnson v. Havener*, 534 F.2d 1232 (6th Cir. 1986).

On the other hand, an allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (quoting *Jackson*). This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* (quoting *Jackson*, 443 U.S. at 324). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra.* A sufficiency challenge should be assessed against the elements of the crime, not against the elements set forth in an erroneous jury instruction. *Musacchio v. United States*, 577 U.S. 237 (2016).

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110

Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc); *Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656 (6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam).

28

> And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651, (2012)(per curiam); *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam).   The federal courts do not make credibility determinations in reviewing sufficiency of the evidence claims.  *Brooks v. Tennessee,* 626 F.3d 878, 887 (6th Cir. 2010).

The Tenth District decided the sufficiency of the evidence claim as follows:

> {¶ 70} Whether there is legally sufficient evidence to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Sufficiency is a test of adequacy. *Id.* The relevant inquiry for an appellate court is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime proven beyond a reasonable doubt. *State v. Mahone*, 10th Dist. No. 12AP-545, 2014-Ohio-1251, ¶ 38, citing *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37, 847 N.E.2d 386.

> {¶ 71} Though Webster captions his argument as a challenge to both the sufficiency and manifest weight of the evidence, his entire argument under this assignment of error relates to the credibility of the witnesses. However, " 'in a sufficiency of the evidence review, an appellate court does not engage in a determination of witness credibility; rather, it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime.' " *State v. Connally*, 10th Dist. No. 16AP-53, 2016-Ohio-7573, ¶ 38, quoting *State v. Bankston*, 10th Dist. No. 08AP-668, 2009-Ohio-754, ¶ 4. Webster does not allege the state failed to present evidence on any of the elements in any of the 17 charges of which he was convicted but instead argues the evidence the state relied on to prove he was the perpetrator lacked credibility. Thus, we will address Webster's arguments related to the credibility of witnesses under our review of the manifest weight of the evidence. *Id.*; *State v. Cervantes*, 10th Dist. No. 18AP-505, 133 N.E.3d 1072, 2019-Ohio-1373, ¶ 33, citing *State v. Sieng*, 10th Dist. No. 18AP-39, 2018-Ohio-5103, ¶ 51.

*Webster, supra.*

The Tenth District applied the correct *Jackson v. Virginia* standard which the Ohio Supreme Court adopted in *Thompson.*  Petitioner has not shown the Tenth District's application is unreasonable.  In particular, a habeas court does not reconsider the credibility of witnesses.  See *Brooks, supra.*  Therefore Petitioner's Third Ground for Relief should be dismissed with prejudice.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends that the Petition herein be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

February 12, 2024.

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. #

s/ *Michael R. Merz*
United States Magistrate Judge